UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNETH JOHNSON<br><br>           Plaintiff,<br><br>      v.<br><br>ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, *et al.,*<br><br>           Defendants. | Civil Action No. 12-4850 (PGS)(DEA)<br><br>**MEMORANDUM OPINION AND ORDER** |

ARPERT, Magistrate Judge

This matter comes before the Court on a Motion by Plaintiff to compel discovery from Defendants [Dkt. No. 31]. Defendants oppose Plaintiff's Motion [Dkt. No. 36]. For the reasons set forth below, Plaintiff's Motion is **GRANTED** in part and **DENIED** in part.

**I.    BACKGROUND**

Plaintiff, an African-American male, alleges that he suffered racial discrimination by state government officials and by a state governmental entity in violation of 42 U.S.C. § 1983. Plaintiff has been a member of the New Jersey State Police ("NJSP") since 1983 and currently holds the rank of Lieutenant. In short, Plaintiff alleges that unfounded disciplinary charges were filed against him with discriminatory intent and that those charges have been used by Defendants to prevent Plaintiff from retiring.

Prior to filing the present action, Plaintiff filed a similar action in the Superior Court of New Jersey, Law Division, Mercer County (the "State Court Action"). The State Court Action was dismissed in 2011 and is presently on appeal. When Plaintiff filed his Complaint in the State

Court Action, he held the rank of Detective. During the pendency of the State Court Action, Plaintiff was promoted to Sergeant, Sergeant First Class and most recently, Lieutenant.

The alleged events underlying the disciplinary charges filed against Plaintiff took place when he was promoted to Sergeant First Class and was given acting command of NJSP's Drug Trafficking South Unit (the "Unit"). According to Plaintiff, in May 2007, a cocaine dealer came to the attention of the Unit and a Digital Number Recording ("DNR") was issued for the suspect's phone. Plaintiff claims that the number of a law enforcement agent who lived across the street from the suspect appeared frequently on the list of numbers in the DNR. On January 5, 2008, Plaintiff was promoted to Lieutenant and assumed formal command of the Unit.

On January 10, 2008, Plaintiff received a report that a narcotics dealer had been taken into custody. When the dealer was arrested, Plaintiff learned the dealer claimed to have knowledge of a law enforcement agent engaging in illegal activity by field testing the purity of cocaine for a wholesale dealer. Plaintiff claims that based on his experience and knowledge of suspects claiming "they can deliver a 'dirty cop' to better their position" he was "skeptical" of the suspect's claims regarding the officer's alleged involvement in illegal activity. Am. Compl. at ¶ 14. Accordingly, Plaintiff believed the allegations against the officer were unsubstantiated and did not warrant reporting to his superiors and Plaintiff ordered his subordinates to proceed with the investigation and report to him immediately if any of the allegations were corroborated.

On January 11, 2008, Plaintiff received information substantiating the dealer's allegations and Plaintiff notified his commanding officer, Joseph Campbell.[1] Although Plaintiff claims there is no rule or regulation specifying a time frame within which a superior officer must be notified that a law enforcement officer is a suspect in criminal activity, disciplinary charges were filed

---

[1] Joseph Campbell was dismissed as a Defendant in this matter with consent of the parties on July 31, 2014 [Dkt. No. 34].

2

against Plaintiff by Defendant Campbell based on Plaintiff's failure to timely notify his superiors of the allegations made by the dealer against the law enforcement officer. In June 2008, the formal documents charging Plaintiff's alleged misconduct were sent to Defendant Fuentes. According to Plaintiff, Defendant Fuentes failed to serve Plaintiff with the charges or act on them within the statutory period.

During the pendency of the disciplinary charges against Plaintiff, he has been ineligible for promotion. In 2011, Defendant Silver became Plaintiff's commanding officer. Plaintiff alleges that Defendant Fuentes intentionally reassigned Plaintiff to Defendant Silver because he was "openly known as harboring animosity to African-Americas because of personal reasons." Am. Compl. ¶ 23. Plaintiff alleges that Defendant Silver frequently and falsely demeaned Plaintiff's capabilities and intentionally caused Plaintiff to be transferred to another unit with a lengthy commute in order to inconvenience and harm Plaintiff.

Plaintiff further alleges that while under the command of Defendant Silver, a photograph of him in a uniform was included in a photographic array and identified by the complaining witness in an investigation into allegations of racial profiling. Plaintiff claims that because he had not worn a uniform in over twenty years, the use of his photograph in the array was "so bizarre . . . that it can only be concluded that such was done for nefarious purposes, to advance the racist agenda of the [Defendants]." Am. Compl. ¶ 26.

According to Plaintiff, his repeated attempts to retire have been denied by Defendant Fuentes. Plaintiff alleges that although Defendants claim that the pending charges against Plaintiff are preventing his retirement, Defendants are in fact withholding retirement from Plaintiff in an attempt to "coerce him to plead guilty to charges of which [he] is innocent." Am. Compl. ¶ 28. Further, Plaintiff claims that Caucasian members of NJSP "chargeable with

3

infractions more serious than [P]laintiff have been permitted to retire" and have been given favorable treatment over minority members in matters pertaining to discipline and promotion. Am. Compl. at ¶ 31.

Based on the foregoing, Plaintiff alleges that he is a "victim of an ongoing pattern and practice of racial discrimination by [D]efendant NJSP under the supervision of [D]efendant Fuentes, through minions including [D]efendants Campbell and Silver." Am. Compl. ¶ 33. As a result of the alleged racial discrimination against Plaintiff, he claims to have suffered "economic harm, humiliation and physical pain and suffering."Am. Compl. ¶ 38.

In the present Motion, Plaintiff seeks six categories of discovery: (1) Defendant Silver's redacted personnel file; (2) database material for Defendants Silver and Fuentes; (3) and (4) statistical information on Lieutenants from January 2006 to January 2010; (5) Plaintiff's full disciplinary history; and (6) information on 34 Troopers who were allowed to retire during pending disciplinary proceedings.

While Defendants have agreed to provide Plaintiff with some of the requested discovery, Defendants argue that Plaintiff's assertion that minority troopers seeking to resign or retire during pending internal investigations or disciplinary proceedings were treated differently based on their race or ethnicity is unsupported by any evidence and that Plaintiff's present requests for information amount to a "fishing expedition." Dkt. No. 36 at p. 8. According to Defendants, although Plaintiff claims he has been prevented from retiring due to Defendant Fuentes' discriminatory actions, Plaintiff was offered and refused a proposed plea agreement in 2009 which would have resolved the pending charges and cleared Plaintiff for retirement.

## II.     LEGAL STANDARD

It is well established that the scope of discovery in federal litigation is broad. See FED. R. CIV. P. 26(b)(1). Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Id.; see also Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000). Moreover, information sought by the parties need not be admissible at trial if it is "reasonably calculated" to lead to discovery of admissible evidence. FED. R. CIV. P. 26.

During the course of discovery, "[a] party may serve on any other party a request within the scope of Rule 26(b)" to produce documents "in the responding party's possession, custody, or control." FED. R. CIV. P. 34(a)(1). Of course, the responding party is not obliged to produce documents that it does not possess or cannot obtain. See Bumgarner v. Hart, Civ. No. 05-3900, 2007 WL 38700, at *5 (D.N.J. 2007) (holding that the Court cannot order production of documents that are not in the responding party's possession or control); see also Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers, 357 U.S. 197, 204 (1958) (acknowledging that Rule 34 requires inquiry into whether a party has control over documents). Not only must the requested documents be in the responding party's possession or control, they must also be relevant. The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. See Barnes Found. v. Twp. of Lower Merion, 1996 WL 653114, at *1 (E.D. Pa. 1996).

While the scope of discovery is undoubtedly broad, the Federal Rules also provide that a Court "must limit the frequency or extent of discovery otherwise allowed" if it concludes that: (1) the discovery sought is cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has

5

had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. FED. R. CIV. P. 26. Further, "the Court has a responsibility to protect privacy and confidentiality interests" and "has authority to fashion a set of limitations that allow as much relevant material to be discovered as possible . . . while preventing unnecessary intrusions into legitimate interests that may be harmed by the discovery of material sought." Schmulovich v. 1161 Rt. 9 LLC, 2007 U.S. Dist. LEXIS 59705, at *3-4 (D.N.J. 2007); see also Pearson, 211 F.3d at 65; Fed. R. Civ. P. 26(c).

Rule 37(a) allows a party to file a motion to compel discovery where the opposing party fails to respond adequately to a document request propounded pursuant to Rule 34. FED. R. CIV. P. 37(a)(3)(B)(iv). Ultimately, it is within the discretion of the Court to grant a motion to compel disclosure for good cause shown. In re Cendant Corp. Sec. Litig., 343 F. 3d 658, 661 (3d Cir. 2003).

## III.   DISCUSSION

### 1. Defendant Silver's Personnel File

Plaintiff's first request seeks a redacted copy Defendant Silver's personnel file "to show complaints and other facts that will lead to the discovery of relevant evidence." Dkt. No. 31, Grossman Decl. at p. 3. Defendants do not oppose this request and agree to provide the file to Plaintiff after redacting any personal and confidential information contained therein and placing the redacted information in a Privilege Log to be provided with the redacted file. Accordingly, Plaintiff's request to compel the production of Defendant Silver's personnel file is GRANTED and Defendants are to provide Plaintiff with a copy of the personnel file, with appropriate redactions, within fourteen (14) days from the entry of this Order.

### 2. Database Material for Defendants Silver and Fuentes

In the second category, Plaintiff seeks "Database materials for Silver and Fuentes, both of which show a variety of activity, including race-based complaints." Dkt. No. 31, Grossman Decl. at p. 3. Defendants object to the production of the requested materials on two grounds. First, Defendants claim that the requested material "is considered to be confidential by statute, rule, case law and Executive Order, and exempt from dissemination except under certain defined circumstances." Dkt. No. 35 at p. 2. Further, Defendants claim that the applicable laws and regulations governing the disclosure of the requested records, particularly as related to complaints made to the State Police Office of Equal Opportunity Employment ("EEO"), "are intended to protect the privacy, confidentiality and security of the complaining individuals." *Id.*

Second, Defendants argue that some of the internal investigations sought by Plaintiff are over twenty years old and therefore lack relevance and materiality to Plaintiff's claims. However, even in light of their objections, Defendants have agreed to provide a summary of the records sought by Plaintiff because Defendants believe that upon reviewing the summary, Plaintiff will discover that the information sought is not contained in the protected materials. Accordingly, Plaintiff's Motion to compel the production of the requested database materials is DENIED without prejudice and may be renewed by Plaintiff by written notice to the Court.

### 3 & 4. Information on Lieutenants from January 2006 to January 2010

In the third and fourth categories, Plaintiff seeks "[i]nformation on lieutenants for the four year period during which [P]laintiff should have been eligible for promotion, including race and disciplinary histories on a statistical basis." Dkt. No. 31, Grossman Decl. at p. 3. Plaintiff believes this information will demonstrate statistical evidence of discrimination. Defendants object to the production of the material sought by Plaintiff on two grounds.

First, Defendants argue that based on the Opinion issued in the State Court Action, and affirmed by the Appellate Division, granting summary judgment in favor of Defendants on all of Plaintiff's claims, any claim brought by Plaintiff in this matter regarding the failure to promote him prior to 2008 is barred by the doctrine of *res judicata* and not subject to review by this Court. The doctrine of *res judicata*, also known as claim preclusion, requires: "(1) a final judgment on the merits in a prior suit involving, (2) the same parties or their privies, and (3) a subsequent suit based on the same cause of action." Duhaney v. Att'y Gen., 621 F.3d 340, 347 (3d Cir. 2010). At the present juncture, the Court makes no ruling as to whether any portion of Plaintiff's claims are barred by the doctrine of *res judicata.* However, even assuming *arguendo* that any claim by Plaintiff alleging a failure to promote prior to 2008 is later held to be barred under *res judicata*, the Court finds that information regarding individuals similarly situated to Plaintiff during the period of time in question is "reasonably calculated" to lead to discovery of admissible evidence. FED. R. CIV. P. 26.

Second, Defendants assert that any promotional, statistical data regarding lieutenants after 2008 is not relevant to Plaintiff's continued promotions because by 2008, Plaintiff held the rank of Lieutenant. Further, Defendants claim that in January 2009, Plaintiff became the principle of an internal investigation in which he was charged with multiple violations, including "Failure to Notify the Division of Information to Which it Would Take Cognizance" and "Questionable Conduct on Duty". At the close of the investigation, the charges were marked as "Substantiated". In March 2014, the Office of Administrative Law held a disciplinary hearing regarding the charged conduct, found Plaintiff guilty and issued a twenty day suspension, which Plaintiff did not appeal.

8

Accordingly, Defendants argue that any data from the beginning of the internal investigation into Plaintiff's conduct in January 2009 through the close of the disciplinary hearing in March 2014 is not relevant to Plaintiff's claims because during the time a trooper is either the subject of an internal investigation or involved in a disciplinary hearing, they are not considered in the promotional process. Therefore, Defendants claim that as a result of this policy, which Plaintiff acknowledged in his deposition in the State Court Action, Plaintiff was ineligible for a promotion from Lieutenant to Captain from January 2009 to March 2014.

Plaintiff's Amended Complaint alleges a violation of 42 U.S.C. § 1983, which provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. To prevail on a section 1983 claim, a plaintiff generally must show: (1) that the defendant acted under color of state law and (2) that the defendant deprived the plaintiff of a right protected by federal law. Samerik v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998). In Plaintiff's Amended Complaint, he alleges that he "is a victim of an ongoing pattern and practice of racial discrimination." Am. Compl. at ¶ 33. Plaintiff's demonstration of the asserted "ongoing pattern and practice" will require the existence of other individuals who suffered the same or similar disparate treatment alleged by Plaintiff. Accordingly, the Court finds that the information sought by Plaintiff on other Lieutenants during the period of time Plaintiff claims he was eligible for and wrongfully denied a promotion is relevant to Plaintiff's claims.

While information on other Lieutenants during the period of time Plaintiff alleges he was eligible for a promotion is relevant to Plaintiff's claim, the Court will not require the disclosure of their entire personnel files. Instead, Defendants shall provide a summary of relevant individuals, without any names or personal information, which includes the length of service of each identified individual, the race of each identified individual (if available), and a synopsis of any prior discipline to which these individuals were subjected.

Additionally, the Court notes that Plaintiff has limited the temporal scope of his request to information from January 2006 to January 2010. Accordingly, Defendants' arguments against the disclosure of information after January 2010 is moot. However, in light of the internal investigation into Plaintiff's conduct in January 2009 and Defendant's policy excluding troopers from the promotional process while the trooper is the subject of an internal investigation or involved in a disciplinary hearing, the scope of Plaintiff's request is limited to information from January 2006 to January 2009. Accordingly, Plaintiff's request for information on Lieutenants from January 2006 to January 2010 is GRANTED in part and DENIED in part and Defendants are to provide Plaintiff with the requested information as limited *supra* within thirty (30) days of the entry of this Order.

### 5. Plaintiff's Full Disciplinary History

Defendants object to Plaintiff's request for his full disciplinary history on the grounds that Plaintiff's complete disciplinary record was previously provided to Plaintiff on October 2011 as part of the Motion for Summary Judgment filed in the State Court Action. Defendants assert that the only addition to Plaintiff's record since it was provided is the currently pending disciplinary charge alleging misuse/abuse of sick time by Plaintiff and Plaintiff has been

provided with a "full and complete" copy of the "Charges and Specifications" concerning the pending disciplinary action.

Although Plaintiff requests his full disciplinary history, he appears to primarily be seeking information regarding the "racial profiling photo array" because he claims the inclusion of his photo in the array was never fully explained and has not been explained in the discovery provided thus far. Defendants claim the inclusion of Plaintiff's photo in the array led Plaintiff to believe that he was named as a principle in the investigation or was included in the investigation based on discriminatory motivations. After becoming aware of Plaintiff's concerns surrounding the photo array, Defendants learned from the Office of Professional Standards that Plaintiff's photo was included in the array because the complaining witness had identified Plaintiff as the offending trooper whose conduct generated the investigation. Defendants assert that Plaintiff was informed by the investigating trooper that although it was not possible for Plaintiff to have been the offending trooper, his photo was included for the purposes of presenting a full and representative array, and that Plaintiff would not be considered as a principle in the investigation and nothing would appear on his record. However, to alleviate Plaintiff's concern regarding the photo array, Defendants have agreed to obtain a copy of the internal investigative file and provide Plaintiff with a properly redacted copy.

Accordingly, because Plaintiff was provided with a full copy of his disciplinary history in 2011 and has since been provided with any additions to his disciplinary history, the Court finds that requiring Defendant to again produce Plaintiff's full disciplinary history would be duplicative. However, although the documentation surrounding the inclusion of Plaintiff's photo in the photo array is not relevant to his disciplinary history because the subject investigation does not appear on Plaintiff's record, Defendants are to provide Plaintiff with a copy of the

investigative file which included Plaintiff's photograph, with appropriate redactions, within fourteen (14) days from the entry of this Order. Accordingly, Plaintiff's Motion to compel the production of his full disciplinary history is GRANTED in part and DENIED in part.

### 6. Information on 34 Troopers Who Were Allowed to Retire During Pending Disciplinary Proceedings

In his Motion to compel, Plaintiff cites an article which states that of the seventy-two State Troopers who have been "forced out" over the past two decades, thirty-eight were terminated outright and "[t]he remaining [thirty-four] retired or resigned while under investigation or after disciplinary charges had been filed." Dkt. No. 31, Ex. A. at p. 3. Based on the article, Plaintiff seeks information on the thirty-four troopers mentioned in the article who were allowed to retire during pending disciplinary proceedings.

Defendants object to the production of the requested materials because Defendants claim that they are not in possession of specific information regarding the thirty-four troopers in question and argue that the information sought by Plaintiff regarding the resignation or retirement of the individuals referenced in the article is not relevant to Plaintiff's claims because the article does not differentiate between individuals at different stages of the disciplinary process or account for policy changes implemented during the past five to ten years.

According to Defendants, the number of troopers referenced in the article was determined by a manual review of records and did not differentiate the troopers by age, gender, race or ethnicity.[2] Furthermore, Defendants claim the number cited in the article is deceiving because it does not distinguish between troopers who retired or resigned while an investigation was

---

[2] Defendants claim that the specifics of the race, gender and ethnicity of the thirty-four troopers are unknown. However, through public sources, Defendants have discovered that at least two of the thirty-four troopers referenced in the article who retired, were "non-white and each included either, or both, loss of tank at time of retirement . . . or loss of significant amounts of accrued sick or vacation time as repayment for improperly obtained monetary benefits." Dkt. No. 36 at 8.

12

pending but before any charges had been filed and troopers against whom formal charges had been filed. Defendants argue that this distinction is important because as a result of policy changes in the past five to ten years, there is no bar to resignation until an internal investigation substantiates a complaint and formal charges are filed. Although a trooper may elect to resign during a pending investigation, that decision results in the forfeiture of retirement benefits accrued with twenty-five years of service.

In contrast, a trooper against whom charges have been filed is not permitted to resign or retire until the disciplinary matter has been fully resolved, and if a trooper is eligible for retirement when formal charges are filed, the Division of Pensions will not act on a retirement application during a pending disciplinary matter. According to Defendants, any pending disciplinary action must be "cleared" before the Pension Board can consider retirement, and the "clearing" process "necessarily includes some form of a plea to an offense and appropriate loss of rank, money or benefits." Dkt. No. 36 at p. 7-8. Defendants assert that the specifics of the retirement process for troopers who are the subject of a pending disciplinary action critically undermines Plaintiff's claims because the approval of a trooper's retirement is decided by the Division of Pensions and not the Division of State Police.

Upon review of Defendants' objections to Plaintiff's request for information regarding the thirty-four troopers referenced in the article who were allowed to retire or resign while under investigation or after disciplinary charges were filed, the Court directs Defendants to conduct a review of information in the possession of the Division of State Police and provide a summary of the records of any troopers who were permitted to retire during an active pending disciplinary matter within the past five years. The summary provided by Defendants, if they are in the possession of such information, is to differentiate between troopers who retired or resigned while

an investigation was pending but before any charges had been filed and troopers who retired or resigned after formal charges had been filed. In order to protect the privacy of these individuals, the names and personal or identifying information should not be included in any summary provided by Defendants. In the event that the Division of State Police is not in possession of the requested information, Defendants are to provide a Certification to that effect. Accordingly, Plaintiff's request is GRANTED in part and DENIED in part, and to the extent that the Defendants are in possession of the requested information, Defendants are to provide Plaintiff with the requested information as limited *supra* within thirty (30) days of the entry of this Order

### IV.   CONCLUSION AND ORDER

Having considered the papers submitted pursuant to Federal Rule of Civil Procedure 78 and for the reasons set forth above;

**IT IS** on this of 14th January, 2015,

**ORDERED** that Plaintiff's Motion to compel discovery from Defendants [Dkt. No. 31] is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiff's Motion to compel the production of Defendant Silver's personnel file is **GRANTED** and Defendants are to provide Plaintiff with a copy of the personnel file, with appropriate redactions, within fourteen (14) days of the entry of this Order; and it is further

**ORDERED** that Plaintiff's Motion to compel the production of database materials for Defendants Fuentes and Silver is **DENIED** without prejudice and may be renewed by Plaintiff by written notice to the Court; and it is further

**ORDERED** that Plaintiff's Motion to compel information on Lieutenants from January 2006 to January 2010 is **GRANTED** in part and **DENIED** in part and Defendants are to provide

Plaintiff with the requested information as limited *supra* within thirty (30) days of the entry of this Order; and it is further

**ORDERED** that Plaintiff's Motion to compel the production of his full disciplinary history is **GRANTED** in part and **DENIED** in part and Defendants are to provide Plaintiff with a copy of the specified investigative file, with appropriate redactions, within fourteen (14) days from the entry of this Order; and it is further

**ORDERED** that Plaintiff's Motion to compel the production of information regarding the thirty-four troopers who Plaintiff claims were allowed to retire or resign while under investigation or after disciplinary charges were filed is **GRANTED** in part and **DENIED** in part and Defendants are to provide Plaintiff with the requested information as limited *supra* within thirty (30) days of the entry of this Order.

/s/ Douglas E. Arpert
DOUGLAS E. ARPERT
United States Magistrate Judge