UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNETH JOHNSON, | |
| Plaintiff, | Civil Action No. 12-4850 (PGS)(DEA) |
| v. | **MEMORANDUM OPINION AND ORDER** |
| ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, *et al.*, | |
| Defendants. | |

ARPERT, Magistrate Judge

This matter comes before the Court on an application by Defendants for an Order precluding Plaintiff from taking the deposition of Defendant Colonel Joseph R. Fuentes, Superintendent of the New Jersey State Police. *See* Dkt. No. 39. Plaintiff opposes Defendants' application and requests an Order compelling Defendant Fuentes to appear for a deposition. *See* Dkt. No. 40. For the reasons set forth below, Defendants' application to bar Plaintiff from deposing Defendant Fuentes is **GRANTED** and Plaintiff's request for an Order compelling Defendant Fuentes to appear for a deposition is **DENIED**.

I.  BACKGROUND

Plaintiff, an African-American male, alleges that he suffered racial discrimination by state government officials and by a state governmental entity in violation of 42 U.S.C. § 1983. Plaintiff has been a member of the New Jersey State Police ("NJSP") since 1983 and currently holds the rank of Lieutenant.  In short, Plaintiff alleges Defendants filed unfounded disciplinary charges against him with a discriminatory intent, which have been used to prevent him from retiring.

The alleged events underlying the disciplinary charges filed against Plaintiff took place when he was promoted to Sergeant First Class and was given acting command of NJSP's Drug Trafficking South Unit (the "Unit"). According to Plaintiff, in May 2007, a cocaine dealer came to the attention of the Unit and a Digital Number Recording ("DNR") was issued for the suspect's phone. Plaintiff claims that the number of a law enforcement agent who lived across the street from the suspect appeared frequently on the list of numbers in the DNR. On January 5, 2008, Plaintiff was promoted to Lieutenant and assumed formal command of the Unit.

On January 10, 2008, Plaintiff received a report that a narcotics dealer had been taken into custody. When the dealer was arrested, Plaintiff learned the dealer claimed to have knowledge of a law enforcement agent engaging in illegal activity by field testing the purity of cocaine for a wholesale dealer. Plaintiff claims that based on his experience and knowledge of suspects claiming "they can deliver a 'dirty cop' to better their position" he was "skeptical" of the suspect's claims regarding the officer's alleged involvement in illegal activity. Am. Compl. at ¶ 14. Accordingly, Plaintiff believed the allegations against the officer were unsubstantiated and did not warrant reporting to his superiors and Plaintiff ordered his subordinates to proceed with the investigation and report to him immediately if any of the allegations were corroborated.

On January 11, 2008, Plaintiff received information substantiating the dealer's allegations and Plaintiff notified his commanding officer, Joseph Campbell.[1] Although Plaintiff claims there is no rule or regulation specifying a time frame within which a superior officer must be notified that a law enforcement officer is a suspect in criminal activity, disciplinary charges were filed against Plaintiff by Defendant Campbell based on Plaintiff's failure to timely notify his superiors

---

[1] Joseph Campbell was dismissed as a Defendant in this matter with consent of the parties on July 31, 2014 [Dkt. No. 34].

2

of the allegations made by the dealer against the law enforcement officer. In June 2008, the formal documents charging Plaintiff's alleged misconduct were sent to Defendant Fuentes. According to Plaintiff, Defendant Fuentes failed to serve Plaintiff with the charges or act on them within the statutory period.

During the pendency of the disciplinary charges against Plaintiff, he has been ineligible for promotion. In 2011, Defendant Silver became Plaintiff's commanding officer. Plaintiff alleges that Defendant Fuentes intentionally reassigned Plaintiff to Defendant Silver because he was "openly known as harboring animosity to African-Americas because of personal reasons." Am. Compl. ¶ 23. Plaintiff alleges that Defendant Silver frequently and falsely demeaned Plaintiff's capabilities and intentionally caused Plaintiff to be transferred to another unit with a lengthy commute in order to inconvenience and harm Plaintiff.

In support of their application for an Order precluding Plaintiff from deposing Defendant Fuentes, Defendants argue that Plaintiff has failed to "allege the direct, personal participation of [D]efendant Fuentes in the alleged discriminatory action suffered by [P]laintiff and that Defendant Fuentes "neither involved himself in the disciplinary process in any way nor prevented [Plaintiff] from retiring by refusing to initiate and/or approve settlement offers made to [P]laintiff . . . ." Dkt. No. 39 at p. 4.

In response to Defendants' application, Plaintiff requests an Order compelling Defendant Fuentes to appear for a deposition. In support of his request, Plaintiff claims that Defendant Fuentes "has an acrimonious personal history with [P]laintiff that goes back to 1997." Dkt. No. 40 at p. 2. Plaintiff alleges that NJSP "over which [Defendant Fuentes] exercises control in every respect, is riddled with racism" and asserts that Plaintiff "is entitled to probe the reasons why [D]efendant Fuentes has permitted this outrageous culture to continue under his watch." *Id.* In

addition to the alleged lengthy history of interactions between Plaintiff and Defendant Fuentes, Plaintiff contends that Defendant Fuentes delayed the disciplinary proceedings against Plaintiff and prevented Plaintiff from retiring during the pendency of the disciplinary proceedings. Plaintiff claims that Defendant Fuentes' actions "show a pattern [of] treatment that shows preferential treatment to troopers, on a basis that will be shown is disproportionately racial." Dkt. No. 40 at p. 5.

## II.     LEGAL STANDARD

As part of pre-trial discovery, parties may seek depositions pursuant to Fed. R. Civ. P. 26. Rule 26 allows depositions if a party believes the deposition will lead to the discovery of admissible evidence. However, Rule 26(c) permits courts to grant a protective order from discovery if good cause is shown. "There is wide agreement among the Circuits that current high-ranking government officials should not be subject to the taking of depositions absent extraordinary circumstances." *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 316 (D.N.J. 2009). This principle arises from the landmark case of *United States v. Morgan*, 313 U.S. 409 (1941), in which the Supreme Court disfavored the taking of depositions of high-ranking governmental officials. In its decision, the Supreme Court analyzed the effects of probing the decision-making process and noted that "[j]ust as a judge cannot be subjected to such scrutiny, so the integrity of the administrative process must be equally respected." *Id.* at 422. Additionally, courts in this district have emphasized an interest in "ensuring that high level government officials are permitted to perform their official tasks without disruption or diversion." *See Buono v. City of Newark,* 249 F.R.D. 469, 470 n. 2 (D.N.J. 2008). In *Buono*, the Court relied upon the First Circuit's observation that, "this rule is based on the notion that high ranking government officials have greater duties and time constraints than other witnesses," and

"without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Id.* (citing *Bogan v. City of Boston*, 489 F.3d 417, 423-24 (1st Cir. 2007)).

Whether an individual qualifies as a high-ranking government official is decided on a case by case basis. *Cf. Byrd v. District of Columbia,* 259 F.R.D. 1, 6 (D.D.C. 2009). The Third Circuit has yet to establish a bright-line rule for classifying individuals as "high-ranking." *See Sensient Colors, Inc.*, at 316. In addressing this issue in *Buono*, the Court found that *Morgan* applied to the Mayor of Newark. *Buono*, 249 F.R.D. at 470. Other district courts have applied the *Morgan* doctrine to establish that a Chief of Police and former Police Commissioner constitute high-ranking government officials. *See Detoy v. City and County of San Francisco,* 196 F.R.D. 362, 370 (N.D.Cal. 2000); *Gibson v. Carmody,* 1991 WL 161087, at *2 (S.D.N.Y. Aug. 14, 1991).

While courts typically refrain from allowing high-ranking officials to be deposed, extraordinary circumstances may exist in a particular action to overcome this general rule. In examining whether extraordinary circumstances are present, the Court looks to five factors outlined by the First Circuit: "(1) that the official's testimony is necessary to obtain relevant information that is not available from another source; (2) the official has first-hand information that could not be reasonably obtained from other sources; (3) the testimony is essential to that party's case; [(4)] the deposition would not significantly interfere with the ability of the official to perform his government duties; and [(5)] that the evidence sought is not available through any alternative source or less burdensome means." *Buono*, 249 F.R.D. at 470 (quoting *Bogan*, 489 F.3d at 423-24).

## III. DISCUSSION

As previously noted, a precise process for determining whether a government official's position qualifies as "high-ranking" has yet to be established in the Third Circuit. However, based on the decisions of courts in other districts, the Court finds that the Superintendent of the New Jersey State Police constitutes a "high-ranking government official." In reaching this decision, the Court relies upon not only prior decisions regarding law enforcement officials, but also the fundamental goal of the *Morgan* doctrine. *Morgan's* aim was to honor the decision-making process and ensure key officials are able to perform their tasks free from undue burdens. Thus, because the Superintendent's responsibilities demand copious amounts of time, coupled with an environment free of unnecessary distractions, the Court finds the Superintendent must not be subject to excessive disruptions and needless scrutiny through pending litigation in order to effectively perform his duties, absent extraordinary circumstances.

In order to determine if extraordinary circumstances exist in the present case, the Court will examine the five factors listed in *Buono*. First, Plaintiff fails to show that Defendant Fuentes holds any information which cannot be obtained from other sources. Plaintiff's allegation that Defendant Fuentes intentionally reassigned Plaintiff to work under the command of a known racist is devoid of any supporting facts which indicate Defendant Fuentes was aware of Defendant Silver's alleged animus towards African-Americans or that Defendant Fuentes reassigned Plaintiff in an effort to harm him. Moreover, the allegation that racism exists throughout the New Jersey State Police does not imply Defendant Fuentes participated or was complicit in establishing such an environment. Nonetheless, the information sought by Plaintiff can be obtained through a deposition of Defendant Silver. Additionally, Defendants state that an individual identified as Victor DeFrancesco managed Plaintiff's disciplinary proceedings without

the involvement of Defendant Fuentes. Accordingly, Mr. DeFrancesco presents a clear alternative source for discovery related to Plaintiff's disciplinary proceedings. Finally, multiple allegations advanced by Plaintiff involve actions taken by Defendant Fuentes' office, not Defendant Fuentes personally. As a result, other members of Defendant Fuentes' staff also constitute alternative sources for the information sought by Plaintiff.

Regarding the second factor of the *Buono* test, it is unclear whether Defendant Fuentes does in fact possess first-hand knowledge relative to any of Plaintiff's allegations. For instance, Plaintiff fails to demonstrate that at the time Plaintiff was reassigned, Defendant Fuentes believed Defendant Silver was racist and acted on that alleged belief with discriminatory intent. Instead, Plaintiff relies upon an assertion that Defendant Fuentes was aware of Defendant Silver's animus without providing any specific facts to suggest the claim is plausible.  Plaintiff's allegations regarding Defendant Fuentes' conduct and actions are vague and unsupported by facts in the record. Accordingly, the Court finds that Plaintiff has failed to demonstrate that Defendant Fuentes possesses any first-hand information which could not be reasonably obtained from alternate sources.

Finally, because Defendant Fuentes' personal involvement in the present case is at best ambiguous, it is unclear if his testimony is essential.  For the reasons noted above, it appears other members of the New Jersey State Police would hold the information sought by Plaintiff. Absent further proof, the Court finds the information sought by Plaintiff through a deposition of Defendant Fuentes can be obtained through other individuals who do not qualify as "high-ranking government officials."  Accordingly, the Court finds that Plaintiff has not established that extraordinary circumstances exist to justify deposing Defendant Fuentes.

7

### IV.     CONCLUSION AND ORDER

Having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 18th day of August, 2015,

**ORDERED** that Defendants' application for an Order barring Plaintiff from taking the deposition of Defendant Fuentes [Dkt. No. 39] is **GRANTED**; and it is further

**ORDERED** that Plaintiff's request for an Order compelling the deposition of Defendant Fuentes [Dkt. No. 40] is **DENIED**.

/s/ Douglas E. Arpert
DOUGLAS E. ARPERT
United States Magistrate Judge